IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MICHELLE THOMAS,                         :
                                         :
                Plaintiff,               :
                                         :
        v.                               :        Civil Action No.   11-449-RGA
                                         :
MICHAEL J. ASTRUE,                       :
                                         :
                Defendant.               :

## MEMORANDUM OPINION

Gary W. Aber, Esq., Wilmington, Delaware, Attorney for Plaintiff.

Lauren M. McEvoy, Assistant U.S. Attorney, Wilmington, Delaware, Attorney for Defendant.

April _16_, 2012
Wilmington, Delaware

1

ANDREWS, UNITED STATES DISTRICT JUDGE:

Before the Court is the defendant's motion to dismiss for failure to state a claim. (D.I.

14). In considering this motion, I take as true the Plaintiff's factual allegations in her Amended

Complaint.

Plaintiff is an employee of the Social Security Administration. Her office is in

Philadelphia. She lives in Dover, Delaware. It is a long commute – 75 miles – by car from her

home to the office, and it takes her roughly three hours each way. Public transportation is

inconvenient and unreliable. Plaintiff is a good employee. She suffers from "paroxysmal

positional vertigo and chronic lumbar back pain." The vertigo occurs without warning and

renders her incapable of driving safely. The Social Security Administration also has field offices

in Dover, Georgetown, and Wilmington, all of which are closer to where she lives, and the Dover

office is within walking distance. She has done a temporary detail in the Georgetown office, and

has asked that she receive the accommodation of being transferred to a job in one of the

Delaware offices.

The Amended Complaint alleges three causes of action. The first alleges a claim under

the American with Disabilities Act (ADA).[1] The second alleges a Title VII claim for retaliation.

The third alleges a Title VII claim based on race and an "ADEA" claim based on age.

A claim under the ADA (or the Rehabilitation Act) requires four allegations: "(1) that the

employee is subject to the statute under which the claim is brought, (2) that she is an individual

---

[1] The motion to dismiss asserts that the United States is not an "employer" within the meaning of the ADA. (D.I. 14, p. 5). The defendant notes that the plaintiff should have brought her suit under the Rehabilitation Act of 1973. The Court does not have to resolve this issue, since it is one that could be addressed if the plaintiff files a second amended complaint.

2

with a disability within the meaning of the statute in question, (3) that, with or without reasonable accommodation, she could perform the essential functions of the job, and (4) that the employer had notice of the plaintiff's disability and failed to provide such accommodation." *Lyons v. Legal Aid Society*, 68 F.3d 1512, 1515 (2d Cir. 1995). The issue is whether she has alleged that "she is an individual with a disability within the meaning of the statute." The parties agree that the relevant statute is 42 U.S.C. § 12102(1)(A), which defines a disability to be "a physical or mental impairment that substantially limits one or more major life activities of [the] individual." "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Further, "[t]he definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A).

The defendant asserts that plaintiff does not suffer from a disability, since the allegation is that the vertigo and back pain limits her "driving," but is not alleged to limit anything else.[2] There are multiple appellate decisions that support the defendant's argument that "driving" is not a "major life activity." *See Ramos-Echevarria v. Pichis, Inc.,* 659 F.3d 182, 188 (1st Cir. 2011); *Winsley v. Cook County,* 563 F.3d 598, 603 (7th Cir. 2009); *Kellogg v. Energy Safety Services Inc.,* 544 F.3d 1121, 1126 (10th Cir. 2008); *Chenoweth v. Hillsborough County,* 250 F.3d 1328, 1329-30 (11th Cir. 2001); *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 643 (2nd Cir.

---

[2] While the plaintiff makes no mention of it in her complaint or her brief, she did administratively advise that the vertigo affected her "vision and walking." (D.I. 2, p. 7).

1998).

The plaintiff responds by citing two cases, one from the Second Circuit and one from the Third Circuit. The Second Circuit case is not on point. In *Lyons v. Legal Aid Society*, 68 F.3d 1512 (2nd Cir. 1995), the plaintiff had "walking" limitations. She could drive. The issue was about a parking space, due to her difficulty getting from her parked car to her office. As the Court noted, whether she had a disability was not an issue. *Id.* at 1515. The Third Circuit case is closer, but it too is not about whether the plaintiff's disability was based on "driving." In *Colwell v. Rite Aid Corp.*, 602 F.3d 495 (3d Cir. 2010), the plaintiff was blind in one eye, and therefore was impaired in the major life activity of "seeing." *Id.* at 501. In response to the defendant's argument about whether driving and driving at night were major life activities, the Court commented: "It may be that driving and driving at night are not major life activities, but that is not the question presented here." *Id.* at 502.

Thus, the case law squarely supports the defendant's position.[3]

The rationale of the courts that have rejected driving as a major life activity has been that "driving" is not inherently a major life activity. Plenty of urbanites do not drive by choice. When driving is compared to other acknowledged "major life activities," what is noteworthy is that major life activities are generally not foregone by choice, and are independent of where one lives. *See Winsley*, 563 F.3d at 603-04; *Kellogg,* 544 F.3d at 1125-26. Therefore, Count I of the Complaint fails to state a claim upon which relief can be granted. It seems unlikely that the plaintiff can cure the pleading defect, but the plaintiff will be given the opportunity to try.

---

[3] The case law was decided under the definition of disability set forth before the ADA was amended effective January 1, 2009. The plaintiff makes no argument that the amendments have any impact relevant to the issue in this case.

4

The defendant states that Count II fails to state a claim for retaliation. The defendant also states the Count II does not allege any exhaustion of administrative remedies. (D.I. 14, p.9, n.2; D.I. 16, p.3, n.1). The plaintiff's response to the motion to dismiss makes no argument at all in relation to Count II. (*See* D.I. 15, p. 10). For that reason, I am going to dismiss Count II. However, for the below reasons, I will dismiss it without prejudice.

The operative portion of the plaintiff's Count II retaliation claim is, "The Defendant's refusal to grant Plaintiff the status of a qualified employee with disabilities pursuant to her requests in whole or in part based upon retaliation for having filed an internal charge she pursued against the Agency, has evolved into this lawsuit." (D.I. 12-1, ¶ 57). This appears to refer to her April 12, 2010, request for EEO counseling in relation to her not being selected for any of five vacant positions for which she had applied. (*Id.*, ¶ 32). Her request for a "hardship transfer" to the Dover office was denied June 10, 2010. (*Id.*, ¶ 34). Her request for a "reasonable accommodation" was denied June 24, 2010. (*Id.*). Plaintiff filed a "formal complaint of discrimination" on June 24, 2010. (*Id.*, ¶ 35).

The defendant's motion to dismiss is primarily based on the argument that the complaint does not state that the person who denied the transfer to Dover on June 24 knew that the plaintiff had sought EEO counseling on April 12. (D.I. 14, p.8). The defendant's point is well-taken. It is also the case that this is a pleading defect that could be cured by a second amended complaint. It is true, as the defendant points out, that the Final Agency Decision reported that the decision-maker had denied knowledge that plaintiff had sought EEO counseling, but that does not make it a fact for purposes of a Rule 12(b)(6) motion, and, thus, the plaintiff is not prohibited from alleging to the contrary. The timing of the events supplies some possible indication of

5

connectedness. Discovery might, or might not, support such a theory, should plaintiff allege it.

The defendant's motion to dismiss for failure to allege exhaustion of administrative remedies is conclusory. To the extent it alleges a pleading defect, it appears it can be cured, as at least three retaliation claims were pursued administratively. (*See* D.I. 2, p.1).

The defendant has also moved to dismiss Count III. The reason is that it does not allege exhaustion of administrative remedies. Count III alleges that the defendant was denied "a vacant position" due to her age and race. It does not allege that she pursued any administrative remedies, and the "Final Agency Decision" attached to her initial complaint makes no allegation based on race or age. (D.I. 2, pp. 6-19). The plaintiff's response does not cite any cases and does not state that she was excused from exhausting administrative remedies. (*See* D.I. 15, p. 10). Since she does not allege that she exhausted administrative remedies, Count III will be dismissed. *See Antol v. Perry*, 82 F.3d 1291, 1295-96 (3d Cir. 1996). There is no hint that there is any possibility that she could amend her complaint to allege such exhaustion, and thus Count III will be dismissed with prejudice.