IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MICHELLE THOMAS,

    Plaintiff,

v.

MICHAEL J. ASTRUE,

    Defendant.

C.A. 11-449-RGA

## MEMORANDUM OPINION

Gary W. Aber, Esq., Wilmington, DE, Attorney for Plaintiff.

Lauren M. McEvoy, Assistant U.S. Attorney, Wilmington, DE, Attorney for Defendant.

November 30, 2012

*[signature: Richard G. Andrews]*

**ANDREWS, United States District Judge:**

Before the Court is the defendant's motion to dismiss for failure to state a claim. (D.I. 22). In considering this motion, I take as true the plaintiff's factual allegations in her Second Amended Complaint. (D.I. 20).

Plaintiff is an employee of the Social Security Administration. Her office is in Philadelphia. She lives in Dover, Delaware. It is a long commute – 75 miles – by car from her home to the office, and it takes her roughly three hours each way. Public transportation is inconvenient and unreliable. Plaintiff is a good employee. She suffers from "benign paroxysmal vertigo, chronic lumbar pain, [] fibroid cystic and diplopia (double vision)." (D.I. 20, ¶ 34). The Social Security Administration also has field offices in Dover, Georgetown, and Wilmington, all of which are closer to where she lives, and the Dover office is within walking distance. She has done a temporary detail in the Georgetown office as a "temporary reasonable accommodation" for her vertigo and fibroid cystic. (*Id.*, ¶15). She asked that she receive the accommodation of being transferred to a job in one of the Delaware offices.

The Second Amended Complaint alleges two causes of action. The first alleges a claim under the Rehabilitation Act of 1973 (RHA), which references the American with Disabilities Act (ADA). The second alleges a Title VII claim for retaliation.

A claim under the RHA (or ADA) requires four allegations: "(1) that the employee is subject to the statute under which the claim is brought, (2) that she is an individual with a disability within the meaning of the statute in question, (3) that, with or without reasonable accommodation, she could perform the essential functions of the job, and (4) that the employer had notice of the plaintiff's disability and failed to provide such accommodation." *Lyons v. Legal Aid Society*, 68 F.3d 1512, 1515 (2d Cir. 1995).

2

The issue is whether she has alleged that "she is an individual with a disability within the meaning of the statute." The parties agree that the relevant statute is 42 U.S.C. § 12102(1)(A), which defines a disability to be "a physical or mental impairment that substantially limits one or more major life activities of [the] individual." Major life activities are:

> (A) In general. For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. (B) Major bodily functions. For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

42 U.S.C. § 12102(2). Further, "[t]he definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A).

The defendant asserts that plaintiff does not suffer from a disability, since the allegation is that the vertigo and back pain limits her driving, but is not alleged to limit anything else. The defendant also asserts that plaintiff's fibroid cystic could qualify under the statute for the major life activity of normal cell growth, but defendant already made a reasonable accommodation for that disability. Further, defendant argues, if plaintiff is requesting another reasonable accommodation for the fibroid cystic, she must first exhaust all administrative remedies before bringing the claim to this Court.

Plaintiff's first Amended Complaint's disability claim was dismissed without prejudice. (D.I. 17). The parties argued the case law, which made clear that "driving" was not a major life activity. I followed the case law. I also noted that the definition of disability was modified subsequent to the case law by amendments to the ADA, effective January 1, 2009. (D.I. 17).

3

Plaintiff now argues that the amendments mean that she is now covered under the statute for her vertigo and back pain. I do not think so, because she has not alleged that these ailments do anything other than affect her ability to drive. Thus, the question remains, is driving a major life activity?

The amendments to the ADA were made in response to two Supreme Court cases: *Sutton v. United States Air Lines, Inc.*, 527 U.S. 471 (1999), and *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,* 534 U.S. 184 (2002). The legislative history noted that *Sutton* and *Toyota* had "narrowed the broad scope of protection intended to be afforded by the ADA, thus eliminating protection for many individuals whom Congress intended to protect." ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553.

In *Sutton*, the petitioners brought a claim under the ADA when they were not considered for employment due to their condition of severe myopia. *Sutton*, 527 U.S. at 475. The Court found that the petitioners were not disabled. *Id*. In its amendments, Congress sought to overturn two of the Court's holdings in *Sutton*. The first was to "reject the requirement . . . that whether an impairment substantially limits a major life activity is to be determined with reference to the ameliorative effects of mitigating measures." ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553. The second was to "reject the . . . reasoning . . . with regard to coverage under the third prong of the definition of disability," which defines a disability as "being regarded as having such an impairment." ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553; 42 U.S.C. § 12102(1)(C).

Congress' attempt to remedy the shortcomings it saw in *Sutton* does not assist plaintiff. The plaintiff's case does not involve any mitigating measure to correct her condition. Additionally, both parties agree that plaintiff's complaint is premised on the first prong of

4

disability, "a physical or mental impairment that substantially limits one or more major life activities," not the third prong. 42 U.S.C. § 12102(1)(A). Thus, changing the law in reaction to *Sutton* provides no basis to interpret the amendments in a way that is applicable to the issue in this case.

In *Toyota*, an employee brought a claim under the ADA for not being granted an accommodation for her carpal tunnel syndrome. *Toyota* 534 U.S. at 187. In the ADA amendments, Congress sought to overturn two of the Court's holdings in *Toyota*. They are (1) to "reject the standards . . . that the terms "substantially" and "major" in the definition of disability under the ADA need to be interpreted strictly to create a demanding standard for qualifying as disabled," and (2) "that to be substantially limited in performing a major life activity under the ADA an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553.

Congress' disapproval of *Toyota* is more closely related to the issue in this case than is its disapproval of *Sutton*. In the end, I do not think the amendments changed anything that was essential to the existing "driving" case law, and I do not think the rejection of *Toyota* undercuts the bases on which the "driving" case law was decided. The issue here is not the degree to which a major life activity is impacted; it is whether a major life activity is impacted at all.

There are multiple appellate decisions that support the defendant's argument that "driving" is not a "major life activity." See *Ramos-Echevarria v. Pichis, Inc.* 659 F.3d 182, 188 (1st Cir. 2011); *Winsley v. Cook County*, 563 F.3d 598, 603 (7th Cir. 2009); *Kellogg v. Energy Safety Services Inc.*, 544 F.3d 1121, 1126 (10th Cir. 2008); *Chenoweth v. Hillsborough County*,

5

250 F.3d 1328, 1329-30 (11th Cir. 2001); *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 643 (2nd Cir. 1998).

Although several of these cases cite to *Toyota* for the proposition that driving is not a major life activity because "it is not of central importance to most people's daily lives," *Toyota* 534 U.S. at 187, they did not need *Toyota* to come to the conclusion that driving was not a major life activity.

In *Chenoweth*, the Court did not use *Toyota*. Instead, it used logic and the principles of statutory interpretation to conclude that driving is not a major life activity. I agree with that Court. "Although [the statute] is not exhaustive, driving is not only absent from the list [of major life activities] but is conspicuously different in character from the activities that are listed." *Chenoweth*, 250 F.3d at 1329. "It would at the least be an oddity that a major life activity should require a license from the state, revocable for a variety of reasons including failure to insure." *Id.* "We are an automobile society and an automobile economy, so that it is not entirely farfetched to promote driving to a major life activity; but millions of Americans do not drive, millions are passengers to work, and deprivation of being self-driven to work cannot be sensibly compared to inability to see or to learn." *Id.* at 1329-30.

In addition, when driving is compared to other acknowledged "major life activities," what is noteworthy is the major life activities are generally not foregone by choice, and are independent of where one lives.

As Congress stated, "whether an individual's impairment is a disability under the ADA should not demand extensive analysis." ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553. I hold that driving is not a major life activity. Concluding this "does not demand extensive analysis."

6

Plaintiff did not originally argue that the 2009 amendments were of any significance. The plaintiff now does so, citing three recent district court cases. (D.I. 23). *See Hoffman v. Carefirst of Fort Wayne,* Inc., 737 F.Supp.2d 976 (D.N.D. 2010); *Feldman v. Law Enforcement Associates Corp.*, 779 F.Supp.2d 472 (E.D.N.C 2011); *Estate of Murray v. UHS of Fairmount, Inc.*, 2011 WL 5449364 (E.D.Pa. Nov. 10, 2011).

While each of these cases acknowledge that the amendments were designed to expand the reach of the ADA, none of the cases actually involved allegations at all similar to those in this case. *Hoffman* involved stage III renal cancer, and the issue was whether the cancer being in remission removed it from being a disability. *Feldman* also involved an issue of remission for a plaintiff with multiple sclerosis, and for a second plaintiff who had had a "mini-stroke" that affected his ability to work. *Murray* involved depression which had affected three specified major life activities. Thus, none of the three cases has any specific analysis which is persuasive or even informative on the issue in this case.

Plaintiff cannot base her complaint on her condition of fibroid cystic. While it is undoubtedly true that fibroid cystic qualifies as a disability, since it involves a major life activity, that is, the operation of normal cell growth, that is not the end of the analysis. Defendant moves to dismiss based on the argument that the plaintiff has not exhausted her administrative remedies.[1] This Court cannot determine plaintiff's request for a reasonable accommodation because plaintiff does not allege that she exhausted her administrative remedies for her fibroid cystic. "The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." *Antol v. Perry*, 82 F.3d 1291, 1296 (3rd Cir. 1996). It is clear that

---

[1]There is also no allegation that the fibroid cystic requires any accommodation.

7

plaintiff cannot allege exhaustion of remedies in regard to the fibroid cystic. Count I will therefore be dismissed with prejudice.

Defendant argues that Count II fails to state a claim for retaliation. Count II does not make clear what is supposed to be the retaliatory act, and what the act is in retaliation for. It mostly concerns another employee who was granted a transfer from Delaware to Florida in May 2011. (D.I. 20, ¶¶60-61). It mentions the specific date of October 30, 2010 (*id.*, ¶59), but I cannot figure out the significance of the date from either the rest of the count or the rest of the complaint, since I do not see that date anywhere else in the lengthy complaint. The earliest date in the complaint that seems to involve an allegation of protected activity is April 12, 2010, when the plaintiff requested EEO counseling. (*Id.*, ¶33). There is also a reference to the denial of the hardship transfer to Dover on June 10, 2010. (*Id.*, ¶35). My best guess is that this is supposed to be the retaliatory activity. In my earlier opinion, I allowed the plaintiff an opportunity to amend the retaliation count to connect the protected activity and the retaliatory activity by alleging that the person who denied the transfer knew about the EEO counseling. Plaintiff has not done so. I have to assume this is because plaintiff cannot do so. For that reason, I will now dismiss Count II with prejudice.