IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MICHELLE THOMAS,

           Plaintiff;

v.

CAROLYN W. COLVIN,
Commissioner of the Social Security
Administration,

           Defendant.

Civil Action No. 11-449-RGA

## MEMORANDUM OPINION

Gary W. Aber, Esq., Wilmington, DE; David L. Rose, Esq., Chevy Chase, MD, attorneys for Plaintiff.

Lauren M. Paxton, Assistant U.S. Attorney, Wilmington, DE, attorney for Defendant.

May 12, 2016

ANDREWS, U.S. DISTRICT JUDGE:

Presently before the Court is Defendant's motion for summary judgment. (D.I. 110). The issues have been fully briefed. (D.I. 111, 119-3, 121).[1] For the reasons set forth herein, the motion for summary judgment is **GRANTED**.

## I. PROCEDURAL BACKGROUND

Plaintiff filed this action on May 23, 2011. (D.I. 2). Plaintiff filed two amended complaints, both of which were dismissed. On July 3, 2013, Plaintiff filed the Third Amended Complaint (D.I. 36), which survived dismissal. (D.I. 44). Plaintiff, a former employee of the United States Social Security Administration (the "Agency"), alleges that the Agency discriminated against her in violation of the Americans with Disabilities Act. Specifically, Plaintiff asserts that the Agency violated the ADA when it: (1) in or around March 2010, did not select Plaintiff for one of five vacant positions in Maryland; (2) on or around June 10, 2010, denied Plaintiff's request for a hardship transfer to a field office in Delaware; and (3) on or around June 24, 2010, denied Plaintiff's request for a job transfer to a field office in Delaware as a reasonable accommodation. (D.I. 36, 44, 70). On January 29, 2016, Defendant filed this motion for summary judgment. (D.I. 110).

## II. FACTUAL BACKGROUND

Plaintiff was hired by the Agency in 1990 as a grade 4 file clerk. (D.I. 124 at 50-51). At that time, she lived in New York and worked at the Agency's Northeastern Regional Payment Processing Center in Queens, New York. (*Id.*). She was promoted several times, including a 2001 promotion to a grade 7 benefit authorizer. (*Id.* at 51). After being unable to "carry the workload," she agreed to be demoted to a grade 6 technical support assistant. (*Id.*).

---

[1] Plaintiff's motion for leave to file an amended answering brief (D.I. 119) is GRANTED.

In 2000, Plaintiff moved from New York to Dover, Delaware. (*Id.* at 51-52). She requested a transfer to one of the Agency's smaller field offices in Delaware. (*Id.*; *see also id.* at 36-37). The Agency offered her a transfer to the Mid-Atlantic Regional Payment Processing Center in Philadelphia, which Plaintiff accepted. In 2010, Plaintiff applied for five Claims Representative positions in Agency field offices in Maryland. (*Id.* at 3-22). The Agency's selecting officials for the five Maryland vacancies designated certain applications as "best qualified." (*Id.* at 24-35). The selectees were chosen from these "best qualified" lists. (*Id.*). While Plaintiff was in most instances placed on the lists of finalists, she was not selected for any of the vacancies. (*Id.*).

In early 2009, Plaintiff submitted a hardship letter to the Agency, requesting a transfer to a Delaware field office. (*Id.* at 36-37). Plaintiff cited "hardships . . . in the form of finances, health issues and elder care." (*Id.* at 36). Plaintiff stated that her transfer to Philadelphia "made [her] financial hardship" more difficult and that she had a long commute from Delaware. (*Id.*). Plaintiff mentioned that she had vertigo, and that it was "a serious matter when you are trying to drive 2 hours to a job and maintain control of your vehicle under those conditions." (*Id.* at 37). In June 2010, Plaintiff's request was denied. The Agency explained that a comparable position did not exist in the Delaware field offices. (*See id.* at 73).

In May 2010, Plaintiff, through the Agency's reasonable accommodation program, sought a transfer to a Delaware field office. In her application, she cited "benign paroxysmal vertigo" and "[c]hronic lumbar pain" as her disabling conditions. (*Id.* at 38-45). The application stated that Plaintiff was unable to drive during vertigo episodes. (*Id.*). In order to alleviate the stress of driving long distances, Plaintiff requested a transfer to a Delaware field office as an accommodation. (*See* D.I. 119-3 at 10). Plaintiff did not identify a specific position in her

3

request. The Agency denied her request, concluding that "the documentation [was] not sufficient to establish that [Plaintiff] ha[d] [a] substantial limitation related to the two conditions she identified." (*Id.* at 48).

## III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1).

4

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247-49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## IV. DISCUSSION

Plaintiff's non-selection claim relates to her application for vacant Claims Representative positions in Maryland. Plaintiff's failure-to-transfer claim relates to her request for a hardship transfer to Delaware, and her request for a transfer to Delaware as a reasonable accommodation. The non-selection and failure-to-transfer claims are addressed separately.

### A. Non-Selection Claim

The Rehabilitation Act of 1973, which incorporates certain provisions of the ADA, applies to federal employers. *Wishkin*, 476 F.3d at 184; *Shiring v. Runyon*, 90 F.3d 827, 830-31 (3d Cir. 1996). To make a *prima facie* showing of discrimination under the Rehabilitation Act, the employee must show "(1) that he or she has a disability, (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job." *Shiring*, 90 F.3d at 831. If the plaintiff makes such a showing, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment action." *Wishkin*, 476 F.3d 185. If the employer makes such a

5

showing, the plaintiff's *prima facie* case is rebutted. *Id.* The plaintiff is then "afforded an opportunity to show that the employer's stated reason for the employment action . . . was pretextual." *Id.* To show pretext, "the plaintiff must 'cast[] sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication . . . or . . . allow[] the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.'" *Id.* (alterations and omissions in original) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994)).[2]

As part of the *prima facie* case, a plaintiff "must demonstrate that the defendant employer knew of the disability." *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996). Without knowledge of the disability, it cannot be inferred that the employer fired someone because of the disability. *Id.* Defendant argues that Plaintiff failed to inform the Agency of her disability. I disagree. Plaintiff explained to selecting officials that she had "medical" reasons for seeking a transfer, and provided, to two of the selecting officials, a physician's note which stated that Plaintiff experienced vertigo and chronic lumbar back pain. (D.I. 124 at 23, 67-71). The note also explained that Plaintiff should not drive during episodes of vertigo, and that she should obtain employment closer to home. (*Id.* at 23). This is sufficient to show that the Agency knew of the disability. Defendant's cited cases do not hold otherwise. In *Morisky v. Broward Cty.*, 80 F.3d 445 (11th Cir. 1996), the plaintiff merely informed her employer "that she could not read and had taken special education courses." *Id.* at 448. The Eleventh Circuit found that these statements did not necessarily suggest that the plaintiff was "suffering from a physical or mental

---

[2] *Fuentes* is a Title VII case. The Third Circuit has held, however, that "the ADA, ADEA, and Title VII all serve the same purpose—to prohibit discrimination in employment against members of certain classes. Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well." *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir. 1995).

6

impairment." *Id.* In *Pridemore v. Rural Legal Aid Society of West Central Ohio*, 625 F. Supp. 1180 (S.D. Ohio 1985), the court held that the plaintiff's statement that he "was born, after a difficult delivery, with miniscule brain damage to the perceptual and sensory-motor areas of the brain in 1952," did not suffice to put the employer on notice of the plaintiff's cerebral palsy. *Id.* at 1184-85. Here, Plaintiff does not rely on vague statements that may have suggested a disability. Her physician's note explicitly specified her conditions and how they affected Plaintiff. Plaintiff has made a *prima facie* showing of discrimination.

Since Plaintiff has made a *prima facie* showing of discrimination, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment action." *Wishkin*, 476 F.3d 185. The Third Circuit has held that "the burden of . . . introducing evidence . . . that there was a nondiscriminatory reason for the unfavorable employment decision . . . . [is] relatively light." *Fuentes*, 32 F.3d at 763. Here, the Agency submitted sworn affidavits from the selecting officials for the five vacancies. (D.I. 124 at 24-35). These affidavits explain that while most of the officials could not recall Plaintiff's applications, they selected the successful candidates on the basis of the candidates' qualifications and work product. (*Id.*). The Agency has therefore satisfied its burden of showing "a nondiscriminatory reason for the unfavorable employment decision." *Fuentes*, 32 F.3d at 763.

After the employer has advanced a legitimate reason for its action, the plaintiff may defeat summary judgment by advancing evidence from which a reasonable factfinder could "disbelieve the employer's articulated legitimate reasons . . . or . . . believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764. Here, Plaintiff has advanced no such evidence. Plaintiff merely insists that, in her opinion, she was more qualified than the other candidates, based on seniority.

7

(D.I. 124 at 66). Plaintiff's "own opinions about [her] performance or qualifications [do not] give rise to a material factual dispute." *Rabinovitz v. Pena*, 89 F.3d 482, 487 (7th Cir. 1996); *Massey v. United States Customs & Border Prot.*, 2004 WL 3019234, at *8 (E.D. Pa. Dec. 28, 2004).[3] "[P]laintiff may avoid summary judgment by pointing to 'some' evidence from which a factfinder could reasonably conclude that the defendant's proffered reasons were fabricated (pretextual)." *Fuentes*, 32 F.3d at 764. Since Plaintiff has failed to advance any evidence of pretext, summary judgment is appropriate.

## B. Failure-to-Transfer Claim

"[E]mployers who are covered under . . . the Rehabilitation Act are required to transfer a disabled employee to vacant positions for which she is qualified where necessary to accommodate her disability." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 208 (3d Cir. 2009). In this context, "[t]he plaintiff must make a *prima facie* showing that reasonable accommodation is possible." *Shiring*, 90 F.3d at 831. If the plaintiff meets this burden, the burden shifts to the defendant to show, "as an affirmative defense, that the accommodations requested by the plaintiff are unreasonable, or would cause an undue hardship on the employer." *Id.* In a failure-to-transfer case, the plaintiff must demonstrate: "(1) that there was a vacant, funded position; (2) that the position was at or below the level of the plaintiff's former job; and (3) that the plaintiff was qualified to perform the essential duties of this job with reasonable accommodation." *Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 230 (3d Cir. 2000); *see also Mengine v. Runyon*, 114 F.3d 415, 420 (3d Cir. 1997) ("[T]he employee has the duty to identify a vacant, funded position whose essential functions he is capable of performing."); *Shiring*, 90 F.3d at 832.

---

[3] Additionally, Plaintiff acknowledges that all of the successful candidates were, at the time of Plaintiff's application, employed at higher pay grades than she was. (D.I. 124 at 64-66).

8

For purposes of a failure-to-transfer claim, "the only positions that need to be considered for a reassignment are those that are not promotions." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1176-77 (10th Cir. 1999) (en banc) (collecting cases); *see also Donahue*, 224 F.3d at 230; 29 C.F.R. app. § 1630.2(o) ("It should also be noted that an employer is not required to promote an individual with a disability as an accommodation."). Here, Plaintiff sought Claims Representative and Contact Representative positions in the Agency's field offices.[4] Plaintiff held a grade 6 technical support assistant role, which was "unique to the regional payment processing centers." (D.I. 123 ¶ 5). Technical support assistants "troubleshoot payment status problems and perform data-entry." (*Id.*). Further, they are "tasked with responding to inquiries for general Agency program information, and . . . refer complex issues to higher-graded personnel." (*Id.*). They "concentrate almost exclusively on the Agency's Title II work." (*Id.*). Since Plaintiff's position was not a "career-ladder" position, "Plaintiff was required to apply for new positions, and compete with others, to advance her career in the Agency." (*Id.* ¶ 6).

The positions Plaintiff sought required a greater degree of skills, knowledge, and judgment than Plaintiff's former position required. (*See id.* ¶¶ 7-12). Claims Representatives "meet with and interview members of the public in their local area, . . . conduct investigations, and . . . gather evidence." (*Id.* ¶ 9). "They must understand how various federal and state laws pertaining to veteran's benefits, disability, workers compensation, railroad retirement, tax codes, and other laws relate to the Agency's programs." (*Id.*). Contact Representatives "interview beneficiaries and the public, and respond to calls and inquiries." (*Id.* ¶ 10). "They are expected to perform complex, varied, non-standardized tasks, requiring application of laws, regulations,

---

[4] The field offices are relatively small compared to the large regional offices. (D.I. 123 ¶ 7). For instance, there are approximately 12 employees in Georgetown, Delaware; 22 employees in Dover, Delaware; and 40 employees in New Castle, Delaware. (*Id.*).

9

policies, and procedures, using a complex body of specialized subject matter knowledge." (*Id.*). Additionally, both of these positions, as "career-ladder" positions, offered greater promotion potential than Plaintiff's position. (*Id.* ¶¶ 9-10). In light of these undisputed facts, I conclude that the only positions identified by Plaintiff constitute promotions. Therefore, Plaintiff has failed to make "at least a facial showing" that "there were vacant, funded positions whose essential duties [s]he was capable of performing . . ., and that these positions were at an equivalent level or position as [her former job]." *Shiring*, 90 F.3d at 832.[5]

"[I]f the summary judgment record is insufficient to establish the existence of an appropriate position into which the plaintiff could have been transferred, summary judgment must be granted in favor of the defendant." *Donahue*, 224 F.3d at 234. Plaintiff has identified no appropriate positions into which she could have been transferred. Accordingly, summary judgment in favor of Defendant is appropriate.[6]

---

[5] In her brief, Plaintiff concedes that she is seeking a promotion. (D.I. 119-3 at 14) ("This Court should reinstate Plaintiff to a grade 7 level and assign her to the first available Customer Representative position in Dover for three months; and thereafter promote her to a GS 9 position and, upon satisfactory performance, to a GS-11 CR position in Dover."). Additionally, the Third Amended Complaint confirms that "Plaintiff seeks make-whole monetary relief for her lost pay and leave and retirement fund payments based on the Agency's failure to place her" in a grade 7 Claims Representative position. (D.I. 36 at pp. 13-14). By seeking lost pay, Plaintiff acknowledges that this position is not "at or below the level of [her] former job." *Donahue*, 224 F.3d at 230.

[6] Plaintiff has also failed to show that a transfer from Philadelphia to Delaware would have been an effective accommodation. *United Airways, Inc. v. Barnett*, 535 U.S. 391, 400 (2002) ("An *ineffective* 'modification' or 'adjustment' will not *accommodate* a disabled individual's limitations."); *see also Donahue*, 224 F.3d at 232 (requiring employee to "demonstrate that a specific, reasonable accommodation would have allowed her to perform the essential functions of her job"). Plaintiff contends she is unable to work during an episode of vertigo. (D.I. 124 at 55-56). She experiences back pain when seated. (*Id.* at 58-59). These difficulties occur whether Plaintiff is working in Delaware or Pennsylvania. (*Id.* at 55-56, 58-59). Additionally, Plaintiff has failed to show the inadequacy of other accommodations. Reassignment is "an option to be considered only after other efforts at accommodation have failed." *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1301 (D.C. Cir. 1998) (en banc); *see also Smith*, 180 F.3d at 1179 (requiring employee to show that "[t]he preferred option of accommodation . . . cannot reasonably be accomplished"). Here, Plaintiff has not explained how other reasonable accommodations are inadequate. The Agency granted Plaintiff advanced sick leave and, on one of the two occasions she experienced vertigo at work, provided her a ride home. (D.I. 124 at 53-54, 57, 61-62).

## V.     CONCLUSION

For the reasons set forth above, the motion for summary judgment is **GRANTED**. An appropriate order will be entered.